IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN CROSSWHITE; and OPUS THREE INCORPORATED,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT OPUS THREE INCORPORATED<br><br>Case No. 2:09-CV-1013 TS |

This matter is before the Court on Plaintiff American General Life Insurance Company's ("American General") Motion for Summary Judgment for its claims against Defendant Opus Three Inc. ("Opus Three").[1]  For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Opus Three is a former insurance agent of American General.  Their relationship was governed by an agency agreement which states in part:

---

[1]Docket No. 24.

1

> Whenever, in the judgment of [American General], it shall become advisable to recall any policy issued before delivery thereof is made, [Opus Three] shall promptly refund to [American General] any commissions received on account of such policy. *Whenever, after delivery, [American General] shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, [American General] shall have the right to charge back commissions and demand that [Opus Three] repay such commissions to [American General].* If American General shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, [Opus Three] shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. *[American General] may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commission on certain products.*[2]

In December 2006, Opus Three sold a life insurance policy with a death benefit of $17 million ("the Policy"). American General paid Opus Three $137,189.97 in commissions on the Policy. In January 2009, the Policy was surrendered to American General in exchange for payment of net surrender cash value in excess of $1.2 million. According to Jay Lohman, a Vice President of Financial Controls for American General, "[t]he applicable commission schedule dictated that surrender of the [] Policy in policy year three resulted in a fifty percent chargeback to Opus Three. As a result, American General charged back $68,594.85 to Opus Three, or fifty percent of $137,189.97."[3]

---

[2]Docket No. 25, Ex. D § V(F) (emphasis added).

[3]*Id.* at Ex. E.

Opus Three disputes the legal sufficiency of the chargeback and the actual amount charged. However, Jonathan Crosswhite, Opus Three's representative, testified in his deposition that he did not dispute the chargeback, just the amount of the chargeback.[4]

Opus Three does not provide evidence regarding the chargeback. It does, however, challenge American General's evidence as inadequate because, rather than provide the actual commission schedule, American General has stated through the affidavit of Jay Lohman that the commission schedule dictates a fifty percent chargeback in this instance.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[5] In considering whether a genuine issue of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7] Both movants and nonmovants of summary judgment motions must support their assertions by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

---

[4]*Id.* at Ex. A, at 43 ("I don't dispute that – the actual chargeback itself, I dispute the amount.")

[5]FED. R. CIV. P. 56(a).

[6]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

3

party cannot produce admissible evidence to support the fact."[8] "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, [and] set out facts that would be admissible in evidence, . . . ."[9] If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it . . . ."[10]

III.  DISCUSSION

The Agency Agreement contains a choice of law clause stating that disputes between the parties shall be governed by "the laws of the state where [American General] is located.[11] American General is located in Texas.[12] Thus, Texas law governs this dispute between the parties.

Under Texas law, when a contract is unambiguous, courts are required to "construe the contract by giving the terms their plain, ordinary, and generally accepted meaning" and a contract "is ambiguous only if the application of established rules of construction leaves an agreement susceptible to more than one reasonable meaning."[13] "In Texas, '[t]he essential elements of a

---

[8]FED. R. CIV. P. 56(c)(1).

[9]*Id.* at 56(c)(4).

[10]*Id.* at 56(e).

[11]Docket No. 25, Ex. D § VII(Q).

[12]*Id.* Ex. D, at 1.

[13]*Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 867 (Tex. App. 2003) (citations omitted).

breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'"[14]

There are two issues before the Court: whether American General effected or procured the surrender, rescission, or cancellation of the Policy, and whether American General has produced sufficient evidence that the proper amount of the chargeback is fifty percent of the commissions paid on the Policy.

The Agency Agreement expressly provided for a chargeback when American General "shall effect or procure the surrender, rescission or cancellation of any policy." Opus Three does not contend that the Policy at issue was surrendered, rescinded, or cancelled. It does argue, however, that American General failed to "effect or procure" the surrender, rescission, or cancellation of the Policy because the policy was voluntarily surrendered in exchange of a net surrender cash value. This argument lacks merit. The voluntariness of the policy holder to surrender the policy does not affect whether American General effected or procured the surrender. American General agreed with the policy holder to pay a lump sum in exchange for the surrender of the policy. Thus, under the plain meaning of "effect or procure," both American General and the policy holder "effected," or brought about[15] the surrender of the policy.

---

[14]*Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001) (alteration in original)).

[15]BLACK'S LAW DICTIONARY defines the verb effect as "To bring about; to make happen." Black's Law Dictionary 533 (7th ed. 1999). Merriam-Webster defines the verb effect as "to cause to happen." THE MERRIAM-WEBSTER DICTIONARY, HOME & OFFICE EDITION 166 (1998).

Opus Three also challenges whether American General properly charged back fifty percent of the commission on the Policy. American General has provided an affidavit supporting its claim. The affidavit is by an American General vice president and states that the chargeback percentage is correct based on the commission schedule. Opus Three has not "cit[ed] to particular parts of material in the record" to dispute the chargeback percentage.[16] Rather, it argues that the affidavit "is conclusory" and is "insufficient to establish a fact as to what the commission schedule says and how or whether it was part of the Agreement"[17] Additionally, Opus Three claims the affidavit is hearsay, but does not explain why this is the case.

The Court finds that the affidavit of Jay Lohman is sufficient to establish the amount owed according to the commission schedule *absent any contrary evidence presented by Opus Three*. The affidavit does not refer to any out of court statements, and affidavits are permissible under Rule 56(c). Thus the Court rejects Opus Three's Hearsay argument. The Agency Agreement incorporated the commission schedule and the affidavit did not need to state this fact. In order to challenge the chargeback percentage after American General properly supported its claim of a fifty percent chargeback, Opus Three needed to cite to evidence in the record that shows a genuine dispute that the percentage charged was incorrect. It has not done so.

The Court find the four elements of a breach of contract are satisfied in this matter. Opus Three does not challenge that the Agency Agreement is a valid contract, and there is no indication that American General did not perform its obligations under the contract. Opus Three

---

[16] FED. R. CIV. P. 56(c)(1)(A).

[17] Docket No. 26, at 7.

has breached the contract by failing to pay the charged-back amount and damaged American General by its failure to pay.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment against Defendant Opus Three (Docket No. 24) is GRANTED.

DATED   January 26, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge